[Civ. No. 8504.   First Appellate District, Division Two.—February 3, 1933.]

MARGARET HERLIHY, Appellant, v. DR. ROBERTSON WARD, Respondent.

M. Jas. McGranaghan for Appellant.

Hartley F. Peart, Gus L. Baraty and Russel Shearer for Respondent.

SPENCE, J.—Upon a trial by jury a verdict was rendered in favor of defendant Dr. Robertson Ward, and from a judgment entered on the verdict, plaintiff appeals.

The events leading up to this litigation cover a long period of time, commencing with an operation for the removal of a goiter performed upon plaintiff by Dr. W. I. Terry in March, 1926, at the University of California Hospital and continuing down to the arrest of plaintiff on July 27, 1929. Defendant took no part in performing the operation, but was chief resident surgeon at the hospital at the time. He subsequently became associated with Dr. Terry, his father-in-law, in private practice. Shortly after the operation had been performed plaintiff began complaining about the results thereof and the alleged failure of Dr. Terry to bring her relief from her trouble. Plaintiff made frequent visits to see the doctors which we need not describe in detail. She appears to have been seriously disturbed mentally over her condition. She was obsessed first with the idea that Dr. Terry had permitted Mr. Fung, an interne, to perform the operation and subsequently with the idea that Dr. Terry had permitted defendant to do so. Her numerous contacts with the doctors at their offices, at the hospital and on the streets were all loud, boisterous and disturbing, and were frequently accompanied by profane language, threats of violence and sometimes actual violence. In referring to one occasion in 1928, plaintiff herself spoke of the time when she "beat up" or had "an altercation with Dr. Terry in his office". Finally in July, 1929, pursuant to the demand of plaintiff for her original hospital record, defendant arranged to meet plaintiff at the hospital. He had previously advised her that the original record could not be taken from the hospital, but he arranged to have her see the original and take a copy. As plaintiff had frequently threatened defendant and had attacked him on two previous occasions, defendant phoned to the police department asking them to have someone present at the hospital. On July 27, 1929, defendant met plaintiff at the hospital and again explained to her that she could not have the original record, but could see the original and have a copy of it. She became boisterous, calling defendant a pup and a dirty cur, said she did not want a copy as defendant could fake a copy any way he

wanted to and she insisted that she was going to have the original record. The conversation lasted several minutes and defendant attempted to further explain why she could not take the original record, but plaintiff continued to act in a boisterous manner. Finally defendant said: "I have done this and if you are not satisfied, Mrs. Herlihy, with seeing the record and having a copy, I cannot do anything more." Defendant started to leave, whereupon the plaintiff grabbed his coat and said: "You are not going to get away from me without giving me the record." She pulled at defendant's clothing, tearing the same and struck defendant on the neck, whereupon two officers stepped up and caused her to release her hold on defendant. She thereafter struck and kicked the officers and attempted to again get hold of the defendant. Plaintiff continued to insist that she was going to have the original record and said that if she didn't get it, she was going to kill the defendant and didn't care if she hung for it. One of the officers asked: "Doctor, what do you want done with the woman?" Defendant answered: "I don't know what to do with her." The officer then said: "We can put her in jail for disturbing the peace or take her to the hospital. What do you think about it?" The defendant replied: "I don't think this woman is responsible for what she is doing. I don't think she has committed a crime; she ought not to be put in jail. I think she needs treatment. She ought to be in the hospital for observation." The officer said: "We cannot take her to the hospital without you swearing to a complaint," and defendant said: "If that is necessary, I will do it." The officers then took plaintiff to the detention hospital, arriving there at about 1 o'clock Saturday afternoon. Plaintiff struggled and resisted throughout the trip. Defendant changed his clothes and took a taxi to the hospital. No complaint was signed that afternoon, but defendant was instructed at the hospital to return on Monday morning for that purpose. In the meantime plaintiff's brother-in-law got in touch with defendant, assured him that he would do his best to control the plaintiff, and asked that he go no further. Defendant told him that all he wanted was protection from plaintiff and again the brother-in-law assured defendant of his cooperation. Plaintiff was thereupon relased from the detention hospital on Monday morning and no complaint was

signed. Subsequently this action was commenced and the judgment in favor of defendant resulted.

In appellant's opening brief, we find three headings as follows: "Summary of facts"; "The complaint states an action for false imprisonment", and "Exceptions". The only heading which purports to show the "nature of the question to be presented" as required is the second above mentioned heading dealing with the sufficiency of the complaint to state a cause of action for false imprisonment. The point made under that heading is therefore the only point which is presented in a manner requiring consideration or comment on this appeal. (*Landa* v. *Steinberg,* 126 Cal. App. 324 [14 Pac. (2d) 532]; *Frank Graves Sash, Door & Mill Co.* v. *Keener,* 127 Cal. App. 410 [16 Pac. (2d) 195]; *Skipitarey* v. *Fitts,* 128 Cal. App. 191 [17 Pac. (2d) 159]; *Milano* v. *Bulleri,* 125 Cal. App. 72 [13 Pac. (2d) 521]; *Kaltenberger* v. *Alexander Hotel Co.,* 124 Cal. App. 198 [12 Pac. (2d) 59].)

It may be conceded that the complaint stated a cause of action for false imprisonment, but as the action was tried and a verdict rendered for the defendant, it is obvious that appellant is not entitled to a reversal merely because of the sufficiency of her pleading. We have previously had occasion to point out that the headings in an appellant's opening brief should state the points involved on the appeal in such manner as to compel a reversal in the event that the points so stated in the headings are well taken. (*Richmond Terminal Corp.* v. *Parr Terminal Co.,* 116 Cal. App. 368 [2 Pac. (2d) 579].) Otherwise the headings are of but little, if any, assistance to the court. But regardless of the insufficiency of the presentation of the appeal, we have examined the briefs and the entire record, including the evidence, and are satisfied that the alleged errors have not resulted in a miscarriage of justice. (Const., art. VI, sec. 4½.)

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 3, 1933.